IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANK D.[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civ. No. 2:21-cv-01891-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Frank D. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits. Full consent to magistrate jurisdiction was entered on January 11, 2022 (Dkt. #5). For the reasons provided below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

    Plaintiff is a 40-year-old man who alleges he is unable to work due to mental and physical impairments. Plaintiff filed an application for Supplemental Security Income benefits with a protective filing date of April 29, 2019. Tr. 22. In his application, Plaintiff claimed disability with an alleged onset date of April 12, 2019. Tr. 228. The claim was denied initially on October 18, 2019 and upon reconsideration on May 9, 2020. Tr. 158, 164. A hearing was held on February 11, 2021, before Administrative Law Judge Diane Davis. Tr. 74-112. On March 8,

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

2021, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled from the alleged onset date, through the date of decision. Tr. 42. On November 15, 2021, the Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 1. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then

       the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

      The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

3 - Opinion and Order

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since April 12, 2019, the alleged onset date. Tr 24.

2. Plaintiff has the following severe impairments: Dissecting hemorrhage of right vertebral artery, stroke, diplopia, exercise induced hypotension, and a neurocognitive disorder. Tr. 24.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 26.

4. Plaintiff has the residual functional capacity to "perform light work as defined in 20 CFR 404.1567(b). The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for about 6 hours total in an 8-hour workday and can sit for about 6 hours total in an 8-hour workday. He can never climb ladders, ropes, or scaffolds, work at unprotected heights, or around unprotected major manufacturing machinery. He can avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, and approaching people or vehicles. He can handle and work with large objects such as boxes, laundry, buckets, and brooms. He can read normal-sized print, view a computer monitor, and discern the size and shape of small objects such as nuts, bolts, and screws. The claimant can understand, remember, and carry out simple, routine tasks that can be learned and mastered in up to 30 days' time or less, with a Reasoning level of 3 or less. At such levels, he can maintain concentration, persistence, and pace within customary norms, make simple work-related decisions, plan and set goals, adapt to routine workplace changes, travel, and recognize and avoid ordinary workplace hazards." Tr. 29.

5. Plaintiff is unable to perform any past relevant work. Tr. 35.

6. Plaintiff was born on December 11, 1972, has at least a high school education and is able to communicate in English. Tr. 113.

7. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy, such as small product assembler, cafeteria attendant, and cashier II. Tr.36.

8. Plaintiff has not been under a disability, as defined in the Social Security Act, since April 12, 2019, the alleged onset date. Tr. 30.

4 - Opinion and Order

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he

5 - Opinion and Order

burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly discounted Plaintiff's subjective symptom testimony for clear and convincing reasons, and
2. Whether the ALJ properly rejected the medical opinions from Plaintiff's neurologist, Dr. Jeremiah Lanford, M.D., and the neuropsychological evaluator, Dr. William Trueblood, Ph.D.

For the following reasons, the Court finds that the ALJ did not err. The decision of the Commissioner is affirmed.

### I. The ALJ provided clear and convincing reasons to discount plaintiff's subjective symptom testimony

The ALJ provided three clear and convincing reasons to discount plaintiff's subjective symptom testimony of physical and mental health symptoms following his stroke in April, 2019. The ALJ found objective medical evidence conflicted with plaintiff's testimony, he improved with treatment, and his everyday activities called his symptom testimony into question. Because the ALJ provided these clear and convincing reasons, supported by substantial evidence, to discount plaintiff's symptom testimony, the ALJ did not err.

6 - Opinion and Order

### A. Conflict with medical record, and improvement with treatment

When evaluating a plaintiff's symptom testimony, an ALJ can consider the plaintiff's response to treatment, 20 C.F.R. § 404.1529(c)(3)(iv)–(v), and improvement with treatment can be sufficient to discount their testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (claimant's back pain improved over the course of treatment); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."). Likewise, an ALJ may consider whether plaintiff's symptom testimony is consistent with objective medical evidence. 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, available at 2017 WL 5180304, at *7-8. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

The ALJ reasonably considered both plaintiff's improvement with treatment and conflicts between his testimony and the medical record when deciding to discount his testimony concerning physical and mental health symptoms. After his stroke in April 2019, Plaintiff showed "dramatic functional improvement" in both physical and mental health over the course of treatment. Tr. 31. After just a few months, Plaintiff no longer needed a walker, and his occupational therapist cleared him for driving. Tr. 1200. By July 2019, Plaintiff's cardiologist stated he had no restrictions on exercise or physical therapy. Tr. 985. By August 2019, Plaintiff's physical therapy included lifting forty-pound water jugs for strength training. Tr. 1147. Though Plaintiff experienced double-vision after his stroke, glasses helped significantly (Tr. 1200), allowing him to drive (Tr. 1132). The ALJ also cited that by September 2019, five months after the stroke, plaintiff consistently reported normal motor strength, sensations, reflexes, and coordination. Tr. 31-32 (citing Tr. 989, 994, 1235, 1258-59, 1262-63, 1348). The ALJ reasonably cited this evidence to undermine plaintiff's testimony about the severity of his physical and mental symptoms following the stroke.

Plaintiff counters that the bulk of the evidence points the other way, and supports the severity of his symptom testimony. For example, Plaintiff points to a note of "profound fatigue" after twenty to thirty minutes in Dr. Russell's treatment records, but this was in the "subjective" portion of the record—in other words, it was what Plaintiff told Dr. Russell, not an observation on examination. Tr. 1257. Dr. Russell's examination findings were all normal. Tr. 1257–58. Nor is that remark consistent with Plaintiff's ability to undergo fifty-five to sixty-minute sessions of physical therapy. *See, e.g.,* Tr. 1112, 1114. Plaintiff also tries to downplay his performance during physical therapy by suggesting that the record showed him to be unable to lift, carry, or handle objects safely or even sit for prolonged periods without fatigue. ECF No. 14, p. 6. But the record he cites was Dr. Lanford's letter opinion, which is at odds with the actual observed activities from the physical therapy sessions.

The few positive examination findings Plaintiff does cite are not enough to render the ALJ's findings of fact anything short of reasonable. While true, Plaintiff still had some limitations—e.g., in balancing on one leg, hopping, skipping, and jumping (Tr. 1179), these arguments go to the weight of the evidence, and the Court may not "reweigh the evidence [and] substitute [its] own judgment" for the ALJ's. *Winans v. Bowen*, 853 F.2d 643, 644 (9th Cir. 1987) (internal quotation and citation omitted). Instead, the question is whether, "considering the record as a whole, a reasonable person might accept [the evidence] as adequate to support" the ALJ's conclusion that plaintiff's history of conservative treatment undermines his credibility (i.e., whether it is supported by substantial evidence). *Thomas*, 278 F.3d at 954. The record, including the collective whole of plaintiff's conservative treatment and improvement with treatment, satisfies this standard. These are clear and convincing reasons, supported by

substantial evidence, to uphold the ALJ's decision to discount plaintiff's subjective symptom testimony.

## B. Activities of daily living

An ALJ may also consider claimant's daily activities when evaluating the claimant's statements about the severity of his or her symptoms. 20 C.F.R. § 404.1529(c)(3)(i). "Even where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted). The Ninth Circuit has upheld ALJs' findings that routine daily activities—e.g., playing video games, using public transportation, shopping in stores (*Ahearn*, 988 F.3d at 1117), walking children to school, going to church (*Molina*, 674 F.3d at 1113), cooking, housekeeping, and doing laundry (*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001))—can contradict a claimant's symptom testimony. Here, the ALJ noted that Plaintiff's activities were "not consistent with the severity of the reported symptoms[.]" Tr. 30–31. The ALJ pointed out that just a few months after his stroke, Plaintiff was mowing his lawn, doing "a lot" of yard work—including digging a twelve-foot trench to move a sprinkler head—camping for the weekend, going on a bike ride, and lifting heavy weights in physical therapy. Tr. 921, 1111, 1132, 1147, 1277. A reasonable person could find these activities inconsistent with Plaintiff's allegations of fatigue, double vision, lack of coordination, and dysmetria.

Plaintiff argues the activities the ALJ cited could be accomplished in fifteen-minute episodes, and therefore do not undercut his alleged fatigue. ECF No. 14, p. 7. But the record does not show that he did these activities in such short segments, and thus the ALJ's finding was reasonable. Moreover, the record conflicts with Plaintiff's claim—the physical therapy records showing Plaintiff's strength training also consistently showed his sessions lasted up to sixty minutes. *See, e.g.*, Tr. 1112, 1114. Plaintiff further casts doubt on the ALJ's decision by noting he fell off his bike three times when

9 - Opinion and Order

trying to ride. ECF No. 14, p. 6. But Plaintiff's record citations cut the other way. In addition to starting water aerobics and planning to start swimming, Plaintiff tried cycling, where he "[f]ell a few times, but improved w/ rep[etitions]." Tr. 1142. Plaintiff was "very happy with progress." Tr. 1142. Elsewhere, he stated that his bike riding "actually didn't go too badly." Tr. 1120. It was therefore not unreasonable for the ALJ to cite Plaintiff's bike riding as a reason to undermine his other testimony of fatigue and lack of coordination. Though the evidence may be susceptible to more than one rational interpretation, "it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679. Thus, because the ALJ made reached reasonable conclusion from the evidence, the Court upholds the ALJ's decision to discount plaintiff's testimony as inconsistent with activities of daily living.

## II.     The ALJ properly evaluated and credited the medical opinions

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. § 404.1527 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. § 404.1520c(a). Plaintiff filed an application for disability insurance benefits on March 2, 2018. Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); *see also* 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. § 404.1520c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. § 404.1520c(a).

In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c).

The ALJ considered opinions from neurologist Jeremiah Lanford, M.D., and William Trueblood, Ph.D. Tr. 32-33. Plaintiff disputes the ALJ's decision to find these opinions unpersuasive, but a reasonable person could find the record adequate to support the ALJ's conclusions, and plaintiff fails to show otherwise. The Court therefore declines to disturb the ALJ's conclusions about the persuasiveness of Doctors Lanford and Trueblood's opinions.

### A. Dr. Lanford

On October 19, 2019, Plaintiff had a treatment visit with Dr. Lanford. Tr. 1336. In his assessment, Dr. Lanford wrote about Plaintiff, "He continues with neurological deficits from this with mild right-hand incoordination and facial sensory changes with SOB [shortness of breath] and mild autonomic features, along with persistent fatigue and concentration issues." *Id.* Dr. Lanford wrote, "He is over a year from his stroke and any improvement isn't likely." *Id.* Dr. Lanford reviewed Plaintiff's MRI imaging, which showed, "[I]mproved R vertebral dissection but still present." *Id.*

Dr. Lanford wrote a letter on March 3, 2020, identifying Plaintiff's workplace limitations. Tr. 1198. He wrote that Plaintiff is at risk of falls with walking, is unable to carry, lift, or handle objects safely, has difficulty with vision, and "any prolonged activity even sitting is significantly limited due to post-stroke fatigue." *Id.* On October 19, 2020, Dr. Lanford completed a medical source statement limiting Plaintiff to fifteen minutes of sitting and standing at one time and both less than two hours total. Tr. 1272. He assessed significant limitations with reaching, handling, and fingering. Tr. 1273. He opined that Plaintiff is incapable of even low stress work due to

11 - Opinion and Order

severe fatigue with any activity and that he will be off task twenty-five percent of the day or more. Tr. 1274.

The ALJ found that Dr. Lanford's medical opinions were not persuasive. Tr. 32. First, the ALJ considered whether Dr. Lanford provided support for his opinion. The factor of supportability looks to the relevant objective medical evidence—that is, clinical signs and diagnostic findings, *see* 20 C.F.R. §§ 404.1502(c), (f), (g)—and the supporting explanations a medical source provides for their opinions. 20 C.F.R. § 404.1520c(c)(1). "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when evaluating a medical opinion. *Ford*, 950 F.3d at 1155. Here, neither Dr. Lanford's opinions nor his treatment records reflect any objective medical evidence supporting the limitations he described. In April 2020, Dr. Lanford noted mild limitations in Plaintiff's functioning that he attributed to ataxia and balance issues, fatigue, gait difficulties, incoordination, and diplopia with skew deviation. Tr. 1198. In October 2020, Dr. Lanford completed a form that listed more specific limitations, but attributed them to the same findings as his earlier letter. Tr. 1271–74.

The ALJ reasonably determined the opinions from Dr. Lanford's Aril and October 2020 evaluations were not supportable. For example, at the October 2020 visit, Dr. Lanford did not record any observations (Tr. 1337), and assessed the same mild deficits noted in April, 2020. Tr. 1337. Dr. Lanford also recorded Plaintiff's statement that he had fatigue, but supportability looks to objective medical evidence (20 C.F.R. § 404.1520c(c)(1)), not plaintiff's subjective symptom testimony. The regulations define "objective medical evidence" as "signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f). "Laboratory findings" are phenomena shown through "medically acceptable laboratory diagnostic techniques"—for example, imaging, blood tests, or echocardiograms. 20 C.F.R. § 404.1502(c). "Signs" are defined as "abnormalities that can be

12 - Opinion and Order

observed, *apart from your statements (symptoms)*." 20 C.F.R. § 404.1502(g) (emphasis added). Thus, since Plaintiff's statements were neither "signs" nor "laboratory findings," they were not "objective medical evidence" and could not satisfy the "supportability" factor. The ALJ therefore reasonably concluded that Dr. Lanford's opinions from the April and October 2020 visits lacked supportability in the record.

The ALJ also reasonably addressed the inconsistency of Dr. Lanford opinions about Plaintiff's postural, and fatigue-related limitations with the record. Tr. 33; 20 C.F.R. § 404.1520c(b)(2), (c)(2). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). Here, the ALJ observed that Dr. Lanford's opinions were inconsistent with examination findings from September 2019 onward that reported "normal motor strength, sensation, reflexes and coordination." Tr. 33. Notably, in September 2019, about five months after his stroke, Plaintiff saw Hans Russell, M.D. Tr. 989. Dr. Russell's examination shows that Plaintiff was alert and oriented, that he had normal reflexes, muscle tone, and coordination, and that he had neither sensory nor cranial nerve deficits. Tr. 989. Plaintiff had normal psychiatric signs and normal musculoskeletal findings, and his eyes appeared normal. Tr. 989. Plaintiff complained about fatigue at this examination (Tr. 988), but not at his follow-up visits with Dr. Russell (Tr. 992).

In December 2019, Dr. Russell observed that Plaintiff's right-sided weakness had "massively improved" and that his dissecting hemorrhage was stable, with no recurrence and well-controlled blood pressure. Tr. 992. Plaintiff reported doing "intense resistance training," though he was worried about a distended abdomen. Tr. 992. All objective findings were normal. Plaintiff did not report fatigue. Tr. 991–92. Again, in March 2020, Plaintiff did not express any

13 - Opinion and Order

concern about fatigue and reported continued improvement in strength and muscle mass. Tr. 1232–33. All objective examination findings were again normal. Tr. 1233–34. In September 2020, Plaintiff reported fatigue if he had to concentrate for twenty to thirty minutes. Tr. 1257. Again, though, all objective findings were normal. A month later, Plaintiff reported some symptoms, mainly shortness of breath, but he did not report fatigue. Tr. 1261. All objective examination findings were, once again, normal. Tr. 1261–62. The ALJ drew the reasonable conclusion that Dr. Lanford's opinion was inconsistent with these treatment records.

The ALJ also found that Dr. Lanford's opinions were inconsistent with Plaintiff's activities. Tr. 33. Notably, just two months after his stroke, Plaintiff was mowing the lawn every two weeks, doing yardwork, and "digging trenches and putting in a sprinkler system." Tr. 30, 895. A physical therapy report from around the same time indicated that Plaintiff "did a lot of yardwork yesterday." Tr. 30, 1277. Despite being tired as a result, he still tolerated his physical therapy well. Tr. 1277. By July—three months after the stroke—Plaintiff was driving again (Tr. 1132) and went on a weekend camping trip (Tr. 1111). He rode his bike (Tr. 921) and had a home exercise program that included cycling, swimming, water aerobics, and walking (Tr. 1118). By August 2019, Plaintiff was consistently undergoing hour-long physical therapy sessions with numerous exercises, including lifting forty-pound water jugs. Tr. 1147.

Plaintiff counters that these activities are not inconsistent with Dr. Lanford's sitting and standing limitations because plaintiff could only perform them "in fifteen minute increments." ECF No. 14 at 13. The record belies this statement. For example, Plaintiff's physical therapy records show that each session was an hour long. Tr. 1109–62. Moreover, activities like going on a weekend camping trip (Tr. 1111) and doing "a lot of yardwork" (Tr. 1227), which included digging a "12-foot trench" to move a sprinkler head (Tr. 97), suggest a greater capacity for

14 - Opinion and Order

endurance than the fatigue Dr. Lanford described. For these reasons, it was reasonable for the ALJ to conclude that Dr. Lanford's opinion was inconsistent with the record.

## B. Dr. Trueblood

Dr. William Trueblood, PhD, evaluated Plaintiff on February 2 and February 3, 2021. Tr. 1360. Despite Plaintiff's average and above-average performance on memory and intellectual tests, Dr. Trueblood assessed at least moderate compromise to executive functioning and mild acquired impairment in processing speed. Tr. 1351. Dr. Trueblood concluded that Plaintiff's "very low" mental endurance has a "very strong" impact on his functioning. *Id.* Dr. Trueblood assessed "very low" concentration, "significant" deficiency in monitoring his performance tasks, "significant" shortcomings in organization, "marked" disorganization," and irritability. *Id.* He assessed "marked" limitations understanding and remembering detailed instructions, carry out detailed instructions, maintaining attention and concentration for extended periods, and performing activities within a schedule and maintaining regular attendance. Tr.1361. Dr. Trueblood also assessed "marked" limitations in completing a normal workday and workweek. Tr.1362

The ALJ reasonably found Dr. Trueblood's opinion unpersuasive because it was neither adequately supported nor consistent with the record. Tr. 33-35. Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. 20 C.F.R. § 404.1520c(c)(1). First, the ALJ reasonably found Dr. Trueblood's opinion lacked explanation, as it was a form opinion with no discussion of how Dr. Trueblood reached his conclusions. Tr. 1360–64. Second, in terms of objective findings, the battery of psychological testing Dr. Trueblood put Plaintiff through yielded results that did not match up with the opinion. Plaintiff scored average or better than average in intellectual skills and memory. Tr. 34, 1354.

15 - Opinion and Order

Dr. Trueblood found Plaintiff's semantic fluency was better than expected for his age and that his semantic memory skills were normal. Tr. 1354. Plaintiff's nonverbal intellectual skills were "likely in the superior range," and attention-related aspects of intellection functioning, such as working memory, was "at least in the average range and could be better than average[.]" Tr. 1354. His processing speed was average, which Dr. Trueblood felt was "likely to be low" for Plaintiff and might reflect "mild acquired impairment." Tr. 1354. Plaintiff had "better than average performance" on a test "posing particularly challenging working memory demands." Tr. 1354. Test results of learning/memory were "better than average," with learning as "most likely better than average" and memory "solidly normal with no indication of accelerated forgetting." Tr. 1355.

In addition to the objective findings, Dr. Trueblood recorded subjective statements from Plaintiff and his wife about his executive functioning. Tr. 34. The ALJ concluded, however, that, overall, the evaluation's objective evidence provided a better measure of Plaintiff's functioning. Tr. 34. And while Plaintiff and his wife described problems with completing tasks, multi-tasking, planning, and organization (Tr. 1356), the ALJ noted that these were inconsistent with Plaintiff's demonstrated ability to complete extensive testing over the course of several hours during Dr. Trueblood's evaluation. Tr. 34.[2] Indeed, Dr. Trueblood himself observed that Plaintiff showed no unusual fatigue or evident frustration. Tr. 1353. Plaintiff "appeared to maintain his attention well" and "did not seem to be impulsive." Tr. 1353. He "persist[ed] well." Tr. 1353. A reasonable person could see these observations as casting doubt on Plaintiff's and his wife's

---

[2] The ALJ erroneously discounted plaintiff's wife's opinion based on her relationship to plaintiff, *see Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009), but this error was harmless because the ALJ also discounted plaintiff's wife's evidence because it conflicted with the record. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (ALJ's error in one reason harmless where remaining reasons were valid and supported finding).

subjective statements that Dr. Trueblood recorded. Therefore, substantial evidence—more than a "mere scintilla"—supports the ALJ's conclusion.

The ALJ also reasonably found Dr. Trueblood's opinion unpersuasive for its lack of consistency with the record. Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ observed that Dr. Trueblood's opinion was at odds with the bulk of Plaintiff's long course of treatment. Tr. 34. Indeed, Plaintiff's mental status findings have consistently been within normal limits. Tr. 34. In May 2019, shortly after Plaintiff's stroke, Dr. Lanford observed that Plaintiff was oriented, had intact recent and remote memory, and intact attention span and concentration. Tr. 876. The following month, Dr. Russell found no significant psychiatric issues (Tr. 892), nor did Kirk Walker, M.D. (Tr. 897, 987). Dr. Russell saw Plaintiff again in December 2019, and his behavior, thought content, and judgment were all normal. Tr. 993. These normal findings continued through 2020 and into 2021. Tr. 1234, 1257–58, 1261–62, 1347. A reasonable person could conclude that, if Plaintiff had the degree of limitations that Dr. Trueblood described, the other treatment records would reflect this.

Dr. Trueblood also wrote two subsequent letters purporting to explain his medical opinions to the Appeals Council. Plaintiff argues these letters undermine the ALJ's conclusions, but the letters do not change this court's analysis. In his letters, Dr. Trueblood explained that the impairment ratings he uses in his evaluation reports and the functional capacity assessment form do not correspond exactly. Tr. 11-12. He explained how Plaintiff's executive functioning deficits are better reflected by Plaintiff's day to day life than the neurocognitive test scores. Tr. 73. Dr.

17 - Opinion and Order

Trueblood wrote that the "[T]est scores [] greatly underestimate the actual degree of impairment." *Id.*

These explanations do not render the ALJ's conclusions unreasonable. Dr. Trueblood said that ratings for impairments were not always the same as functional ratings. Tr. 11–12. This does not undercut the ALJ's reasoning. While true that a medical opinion will reflect the medical source's judgment, the ALJ cannot simply accept an opinion without question. *See Ford*, 950 F.3d at 1155. To hold otherwise would negate the regulations that require ALJs to consider the explanation and supporting objective medical evidence. And here, it was not simply a matter of whether a moderate impairment led to a marked limitation. The psychological testing repeatedly yielded results that were "normal," "solidly normal," "average," or "better than average," with one rating of "superior." Tr. 1353–55. It was reasonable for the ALJ to consider those discrepancies in evaluating the persuasiveness of Dr. Trueblood's opinion. For the reasons noted above, the court will not disturb the ALJ's finding that the opinion is unpersuasive.

Plaintiff also argues Dr. Trueblood's findings are more consistent with the record than the ALJ suggested. ECF No. 14 at 15. Plaintiff specifically emphasizes that the opinion was inconsistent with the repeatedly normal findings in treatment and the lack of mental health care, because plaintiff had a stroke rather than a mental impairment. *Id.* But Dr. Trueblood's opinion noted that Plaintiff would be unable to perform many basic work tasks for up to 30% of the day; it is not unreasonable to conclude that such significant limitations would manifest in the course of almost two years of treatment that consistently measured Plaintiff's mental status. It was not error to find Dr. Trueblood's opinion inconsistent with the record. And inconsistency can support a conclusion that an opinion is not persuasive even where that opinion is otherwise supported. *See Woods*, 32 F.4th at 793 n.4 (holding ALJ reasonably found supported opinion unpersuasive

because it was inconsistent with the record). This is not a reason to dismiss the ALJ's conclusion that Dr. Trueblood's opinion is unpersuasive either.

## ORDER

The ALJ did not err. The decision is AFFIRMED.

It is so ORDERED and DATED this __1__ day of May, 2023.

MARK D. CLARKE
United States Magistrate Judge

19 - Opinion and Order